## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DELLA TAPIA,

        Plaintiff,

vs.                                                                Civ. No. 01-1087 MV/KBM ACE

TORRANCE COUNTY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed February 10, 2003, **[Doc. No. 93]**.  The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED in part and DENIED in part**.

## FACTUAL BACKGROUND

Plaintiff Della Tapia was the Director of the Torrance County ("County") Senior Services Program from 1996 until her termination on January 3, 2001.[1]  In September 2000, Plaintiff was diagnosed with breast cancer.  Plaintiff continued to work, but took many days off to receive chemotherapy and other treatments.  On October 8, 2000, Plaintiff informed her supervisor,

_____

[1] On Defendant's Motion for Summary Judgment, the facts must be taken in the light most favorable to Plaintiff; accordingly, in the recitation of the facts, the Court will describe the facts as supported by the Plaintiff's evidence.

Torrence County Manager Babette Stepp,[2] of her breast cancer diagnosis.

A month later, Ms. Stepp came into Plaintiff's office; closed the door; and began accusing Plaintiff of "stabbing her in the back," "breaking her confidence as a friend" and making similar comments.  Plaintiff asked what was going on, but Ms. Stepp gave no response.  Ms. Stepp stepped out of the office and called in two of the County Commissioners who gave Plaintiff a letter stating that she was being placed on paid administrative leave pending the investigation of allegations made against her and her department.  The letter instructed Plaintiff to be available during working hours while the investigation continued and to have no contact with the department or its employees.

Plaintiff repeatedly asked the County Commissioners during the conversation what she had done wrong, but they only responded that it was the State that was doing it.  Plaintiff was told to clean out her desk; directed to turn in her keys, County phone, and County pager; and then escorted to her car.

On December 5, 2000, Plaintiff received a letter from Ms. Stepp providing notice of, and the reasons for, her proposed termination.  The letter outlined four bases for the termination: 1) theft of County property and unapproved use of County property for personal reasons; 2) deliberate falsification of information on County records; 3) refusal to carry out reasonable orders; and 4) intentional and unapproved destruction of County records.  The letter stated that a predetermination hearing would be held on December 11, 2000.

On December 8, 2000, counsel for Plaintiff wrote to Ms. Stepp stating that Plaintiff would

---

[2]  It appears that during the relevant events, Ms. Stepp went by Babette Berkshire and that she changed her name to Babette Stepp after the relevant events.  For the sake of clarity, the Court will refer to her as Ms. Stepp throughout the opinion.

be unable to attend the predetermination hearing because of the effects of her treatment for cancer and other medical conditions.  Plaintiff's counsel attached a letter from Plaintiff's physician stating that Plaintiff could return to work no earlier than December 29, 2000.  The letter from Plaintiff's counsel further requested information regarding each of the four allegations that formed the basis of her proposed termination.  Also on December 8, 2000, Plaintiff submitted a request that she be placed on sick leave until December 29, 2000, or until her doctor released her to return to work.

The County Attorney responded to Plaintiff's counsel's letter and Plaintiff's request for sick leave on December 11, 2000.  The County Attorney's letter stated that Plaintiff could not convert her status of being on administrative leave with pay into sick leave.  The letter further stated that it was the County's position that Plaintiff's condition, as described by her doctor, did not prevent her from attending a predetermination hearing.  In addition, the letter denied the request for further information.  The letter closed by stating that the consequence of failure to attend the predetermination hearing would be confirmation of the proposed termination.  The County Attorney sent a second letter on December 11, 2000, noting that Plaintiff could respond to the notice of proposed termination in writing.

Still on December 11, 2000l, Plaintiff's counsel sent a letter to the County stating that Plaintiff was physically unable to attend the hearing and that she could not respond to the notice of proposed termination without further details about the basis of the charges against her.

On December 13, 2000, the County Attorney sent a letter to Plaintiff's counsel resetting the predetermination hearing for December 20, 2000, and reiterating that Plaintiff could respond to the causes for proposed termination in writing.  The letter also provided some more detail

3

regarding the earlier articulated bases for Plaintiff's proposed dismissal:

1.    Theft of County property, including, without limitation, misdirection to a
      petty cash box of receipts from senior citizen payments and use of said
      funds for personal purposes; and removal of food from senior citizen
      centers to Plaintiff's home for personal use.

2.    Unapproved use of County property for personal purposes, including,
      without limitation using County vehicles for personal trips, and taking
      from County premises to her home, or other locations, equipment such as
      computers, printers, and fax machines for her personal use.

3.    Deliberate falsification of information on County records, including,
      without limitation deliberately overstating mileage and riders on senior
      citizen vans for reimbursement by Medicaid.

4.    Refusal to carry out reasonable orders, including, without limitation,
      instructions prohibiting personal use of County vehicles, and instructions
      to inform the County Manager's office of Plaintiff's whereabouts during
      the business day.

5.    Intentional and unapproved destruction of County records, including,
      without limitation, destruction of records of senior citizens van riders and
      payments.

The County Attorney's December 13, 2000 letter further stated that the allegations against

Plaintiff were based upon the testimony of Sandra Jury, Rod Zink, and Lydia Crider and upon

surviving County records.

Plaintiff's counsel responded to the County Attorney's December 13, 2000 letter

on the same day, noting her shock that Plaintiff should interrupt her medical treatment to

attend the predetermination hearing; that court precedent held that Plaintiff's due process

rights would be violated absent a pre-termination explanation of the County's evidence

against Plaintiff; that barring Plaintiff's counsel from the predetermination hearing would

violate Plaintiff's due process; and that Plaintiff was entitled to be placed on sick leave.

4

On December 19, 2000, the County Attorney wrote to Plaintiff's counsel responding to the legal arguments she had made in her December 13, 2000 letter and providing substantially more detail regarding the basis of the causes for proposed termination.

On December 20, 2000, Ms. Stepp sent Plaintiff a letter noting that Plaintiff had not appeared for her predetermination hearing and that, based on the investigation and consideration of the allegations made against her, her employment would be terminated effective immediately. After another exchange of letters between the County Attorney and Plaintiff's counsel on December 20 and 21, 2000, the predetermination hearing was again reset, for December 29, 2000.

On December 28, 2000, Plaintiff's counsel wrote to the County Attorney stating that Plaintiff could not appear for the December 29, 2000 predetermination hearing because of her medical condition. Plaintiff's counsel attached a note from Plaintiff's physician, which stated "Ms. Tapia is having chemotherapy side effects and severe anxiety, she should be off work until reassessed next week."

Plaintiff did not appear for the hearing on December 29, 2000. On January 3, 2001, Ms. Stepp wrote a letter to Plaintiff stating that the failure to appear for the predetermination hearing, failure to explain an inability to appear, and the failure to provide any written statement, was being regarded as a waiver of the hearing. The letter further gave notice that Plaintiff's employment with Torrance County was terminated effective immediately.

Plaintiff has denied all of the accusations that formed the basis of the articulated

causes for her termination and describes the basis for those denials; however, it does not

appear that Plaintiff described to the County before her termination why the accusations

against her were incorrect.

Throughout the time Plaintiff was on administrative leave and up through her

termination, she became increasingly ill.  There were times that she stared blankly, cried,

shook, fainted, and had panic attacks.  In November and December 2000, she was

diagnosed as having depression, severe anxiety, and acute stress disorder.  In June 2001,

Plaintiff was diagnosed as having major depression, post-traumatic stress syndrome, and

intense anxiety.  Similar diagnoses were made in January 2002.

Plaintiff filed this matter on September 19, 2001, alleging that Defendant Torrence County

violated the Americans with Disabilities Act ("ADA"), New Mexico Human Rights Act

("NMHRA"), the Family Medical Leave Act, the Due Process Clause of the United States

Constitution, defamed Plaintiff, and wrongfully discharged Plaintiff.

## SUMMARY JUDGMENT STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are

intended to "secure the just, speedy and inexpensive determination of every action."  *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c),

summary judgment is appropriate when the court, viewing the record in the light most favorable

to the nonmoving party, determines that "there is no genuine dispute over a material fact and the

moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,*

2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support

6

the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex,* 477 U.S. at 322.

## DISCUSSION

## I.   DISCRIMINATION CLAIMS UNDER THE ADA AND NMHRA

### A.   Disparate Treatment on Basis of Disability

Defendant asserts that Plaintiff has failed to adduce sufficient evidence for a reasonable trier of fact to find that Defendant's adverse employment actions against Plaintiff were based on her disability in violation of the ADA or NMHRA.

Generally, discrimination claims under the ADA that are supported by indirect evidence of

discrimination are examined under the familiar burden-shifting analysis first articulated by the

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Courts utilize the same test

for claims of disability discrimination under the NMHRA.  *Perry v. Woodward*, 199 F.3d 1126,

1141 (10th Cir. 1999) (holding that under the NMHRA, a plaintiff must present direct evidence of

discrimination or, alternatively, may choose to present indirect evidence by utilizing the

*McDonnell Douglas* burden-shifting framework) (citing *Martinez v. Yellow Freight Sys., Inc.*,

113 N.M. 366, 826 P.2d 962, 964-65 (1992)).

Under the burden-shifting method, the plaintiff first has the burden of establishing a *prima

facie* case of disparate treatment.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff succeeds

in showing such a *prima facie* case, a presumption of illegal discrimination is created and the

burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason

for the challenged act.  *Id.*  If the defendant meets its burden by producing a "clear and reasonably

specific" explanation for the conduct, *Burdine*, 450 U.S. at 258, the plaintiff may show that the

reasons offered by the defendant were merely a "pretext" for discrimination, *McDonnell Douglas*,

411 U.S. at 804.  Throughout the process of applying the *McDonnell Douglas* test, courts must

remain flexible because the test "was never intended to be rigid, mechanized, or ritualistic."

*Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

A plaintiff can establish a *prima facie* case of discrimination under the ADA by

demonstrating:  (1) that he or she is a disabled person within meaning of ADA, (2) that he or she

is qualified, that is, able to perform the essential functions of the job, with or without reasonable

accommodation, and (3) that the employer took the adverse employment action under

circumstances that give rise to an inference that the action was based on his or her disability.  *See, e.g.*, *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997).

       1.      **Plaintiff's *Prima Facie* Case of Discrimination**

       i.      **Plaintiff's Disability Under ADA and NMHRA**

Plaintiff asserts that her breast cancer and related conditions make her a disabled person within the meaning of the ADA and NMHRA.  The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

Under subsection (A), a plaintiff must show that he or she has an impairment that substantially limits at least one major life activity.  *See Bristol v. Bd. of County Comm'rs,* 281 F.3d 1148, 1158 (10th Cir.), *vacated in part on other grounds on reh'g en banc,* 312 F.3d 1213 (10th Cir. 2002).  Whether the plaintiff has an impairment and whether the conduct affected is a major life activity are question of laws for the court to decide.  *Id.* at 1156-57; *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.,* 168 F.3d 1228, 1230 (10th Cir. 1999).  However, ascertaining whether the impairment substantially limits the major life activity is a factual question for the jury.  *Bristol*, 281 F.3d at 1157.

Plaintiff asserts that the effects of her breast cancer and its treatment constitute a recognized impairment.  The Court agrees.  *See, e.g., Keller v. Board of Education,* 182 F.Supp.2d 1148, 1155 (D.N.M. 2001) (collecting cases and finding that effects and treatment of plaintiff's breast cancer is an impairment that substantially limited a major life activity).

Plaintiff fails to provide a clear articulation of what major life activities are limited, or how

they are limited, by her breast cancer and its treatment.  Plaintiff does, however, suggest that the

effects of her cancer and related conditions have prevented her from working.[3]  The Supreme

Court has been reluctant to hold that "working" is a major life activity.  *Toyota Motor Mfg. v.

Williams,* 534 U.S. 184, 200 (2002) ("Because of the conceptual difficulties inherent in the

argument that working could be a major life activity, we have been hesitant to hold as much, and

we need not decide this difficult question today.").  The Supreme Court has, however, assumed

from time to time that "working" is a major life activity, *Sutton v. United Air Lines Inc.*,

527 U.S. 471, 492 (1999), and the EEOC regulations interpreting the ADA include "working" as

a major life activity.  29 C.F.R. § 1630.2(i) (defining " major life activities" as including functions

"such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning, and working.").  Accordingly, the Court holds that working is a major life

activity.

To establish that an impairment substantially limits the major life activity of working, a

plaintiff must show that the impairment prevents the plaintiff from performing a class of jobs or a

broad range of jobs.  *See, e.g.*, *Sutton*, 527 U.S. at 491 ("When the major life activity under

consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum,

that plaintiffs allege they are unable to work in a broad class of jobs."); *MacDonald v. Delta Air*

---

[3]  Plaintiff has also produced evidence suggesting that she found it difficult to shop at a convenience store.  Shopping and similar activities have typically been found not to constitute a major life activity.  *See Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2nd Cir. 1998) (concluding that "a number of activities that cannot reasonably be deemed major league, such as driving, doing mechanical work on cars, performing housework other than basic chores, going shopping in the mall with his wife, skiing, and golfing" did not qualify as major life activities). Assuming that the inability to shop at a convenience store does not constitute a limitation on a major life activity, the Court will only examine "working" as the major life activity limited by Plaintiff's impairment.

*Lines, Inc.*, 94 F.3d 1437, 1444-45 (10th Cir. 1996) (holding that disability discrimination plaintiff who shows only that he is unable to perform single, particular job, fails to show that he is 'substantially limited in major life activity of working,' as required for ADA claim.); 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

Plaintiff describes how the effects of her breast cancer and treatment and the related conditions of depression, anxiety, and post-traumatic stress have caused her to stare blankly, cry, shake, faint, hear voices, and have panic attacks.  Although Plaintiff's explication of how these conditions have affected her work could be much more specific, the Court concludes that a jury could find that these manifestations of Plaintiff's impairment prevent her from working a broad class of jobs.

### ii.      Ability to Perform Essential Elements of the Job

Defendant does not appear to dispute that Plaintiff was able to perform the essential elements of her job.  Even if Defendant does challenge Plaintiff's ability to meet this second prong of her *prima facie* case, Plaintiff has adduced ample evidence for a jury to find that she was performing very well in her position up to the time she was placed on administrative leave. Indeed, her supervisor and County Commissioners have testified that Plaintiff excelled in her position.  In addition, approximately nine months before she was terminated Plaintiff received a very positive evaluation, which termed her "an excellent employee."  This evidence is sufficient for a trier of fact to find that Plaintiff was able to perform the essential functions of her job.

11

**iii.     Circumstances of Adverse Action that Raise Inference of
Discrimination**

Plaintiff has adduced little evidence to show that the decisions to place her on
administrative leave or terminate her were based on her disability.  The essence of Plaintiff's
argument is that the timing of her announcing her breast cancer to her employer in early October
and her being placed on administrative leave in early November suggests more than mere
coincidence.  Plaintiff has presented no authority suggesting that the mere timing of an employer
becoming aware of a disability and a subsequent adverse employment decision is sufficient to
support an inference that the adverse employment decision was based upon the disability.

The Tenth Circuit, however, has repeatedly held that an inference of *retaliation* can be
based solely on the close temporal proximity between some protected activity and an adverse
action.  *See, e.g.*, *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("[a]
causal connection may be shown by evidence of circumstances that justify an inference of
retaliatory motive, such as protected conduct closely followed by adverse action.") (internal
quotes omitted);  *McGarry v. Board of County Com'rs of County of Pitkin*, 175 F.3d 1193, 1201
(10th Cir. 1999) ("The requisite causal connection may be shown by producing evidence of
circumstances that justify an inference of retaliatory motive, such as protected conduct closely
followed by adverse action.") (internal quotes omitted);  *Anderson v. Coors Brewing Co.*,
181 F.3d 1171, 1179 (10th Cir.1999) (noting that "[t]he date of Plaintiff's termination is key to
this inquiry because the closer it occurred to the protected activity, the more likely it will support
a showing of causation");  *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596
(10th Cir. 1994) (holding that one and one-half month period between protected activity and

12

adverse action may, by itself, establish causation).

Just as temporal proximity between protected activity and adverse action can suggest retaliatory motive, the Court finds that temporal proximity between first knowledge of a disability and an adverse action can suggest discriminatory motive. Accordingly, the Court is persuaded by the analogy to retaliatory motive cases that the closeness in time between Plaintiff's making her supervisor aware of her breast cancer diagnosis and the decision to place her on administrative leave may be considered when determining whether the decision to place Plaintiff on administrative leave was based on her disability.

Plaintiff also notes that she was told by another employee that Plaintiff's supervisor had asked the other employee whether the other employee could take over Plaintiff's job. This occurred after the supervisor discovered that Plaintiff had been diagnosed with breast cancer but before any allegations of misconduct, which would serve as the stated reason for Plaintiff's ultimate termination, had been leveled against Plaintiff.[4] The Court agrees with Defendant's assertion that this statement could have the innocuous interpretation that the supervisor was asking the other employee whether she would be able to handle the Plaintiff's duties while the Plaintiff was off work receiving treatments or other medical attention. On Defendant's motion for summary judgment, however, the Court must view the evidence in the light most favorable to the Plaintiff, and, as Plaintiff asserts, the supervisor could have meant that she intended to force

_____

[4] Defendant argues that because the statement is hearsay, it should not be considered by the Court. The parties have not had the opportunity to brief the Court on the legal and factual issues surrounding the possible admission or exclusion of this statement. Notably, the parties have not informed the Court what the participants to this conversation have testified about what was said. Accordingly, the Court will not make any ruling regarding its admissibility, but recognizes that it may be given little or no weight if it were presented to a trier of fact.

Plaintiff out of her job because of the recently discovered disability and that the other employee would replace Plaintiff.

The Court finds, based on the timing of the decision to place Plaintiff on administrative leave and the statement attributed to Plaintiff's supervisor, that the Plaintiff narrowly meets her burden of producing enough evidence to permit a trier of fact to infer that the decision to place Plaintiff on administrative leave on November 8, 2000, was based on her disability.

Plaintiff has presented no further evidence to support the inference that the other challenged adverse action— the January 3, 2001, termination—was based on her disability.  The Court finds, however, that the evidence supporting an inference that the decision to place Plaintiff on administrative leave was based on her disability is also sufficient to support a finding that the termination, which was the culmination of the process begun by placing Plaintiff on administrative leave, was also based upon her disability.

### 2.    Legitimate Non-Discriminatory Reason for Adverse Actions

With Plaintiff having presented sufficient facts to support a finding that she meets her *prima facie* case, the burden shifts to Defendant to produce a "clear and reasonably specific" explanation for its conduct.  Defendant asserts that Plaintiff was placed on administrative leave and ultimately terminated because of reports of Plaintiff's misconduct.  Reliance on the multiple reports of significant misconduct suffices as a clear and specific explanation for the adverse employment action.

### 3.    Evidence that Reason is Pretext

Once the employer meets its burden of production by coming forward with a nondiscriminatory reason for the adverse action against the plaintiff, the plaintiff must show that

"there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief." *See, e.g.*, *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995).

Pretext can be shown by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan*, 108 F.3d at 1323 (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)) (further citation omitted).  Of course, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff appears to make three arguments in support of finding pretext.  First,  Mr. Zink, Ms. Crider, and Ms. Jury's reports of misconduct were facially untrustworthy and therefore Defendant should not have relied upon them.  Second, Defendant did not allow Plaintiff to participate in the investigation of the allegations of misconduct, and, as a result, did not hear Plaintiff's refutations.  Third, Ms. Stepp lied, which creates a question of fact as to whether Ms. Stepp believed the other employees' reports of discrimination.

### i.      Reports of Misconduct

The Court agrees with Plaintiff's implicit assertion that a jury could find pretext where an employer claims to have relied on reports of misconduct that were facially untrustworthy. However, to show pretext this way, a plaintiff must do more than just present evidence that the reports may have been suspicious; instead, a plaintiff must present sufficient evidence for a trier of

fact to find that the reports were so clearly wrong that the employer necessarily knew they were false.

In support of her assertion that the reports of  two of the employees, Mr Zink and Ms. Crider, were untrustworthy, Plaintiff notes that the employees had left their employment with the County; that one of them may have held a grudge against Plaintiff because she had discovered a past felony that led to his termination; and that they were reporting on events that had supposedly been going on for years.  While these facts may call for the employer to conduct a searching inquiry into the validity of the reports, they do not demonstrate that the reports were facially untrustworthy or that the employer knew that they must be false.  Plaintiff has presented no further evidence suggesting that Defendant did not actually believe the reports of Mr. Zink and Ms. Crider.  As a result, the Court finds that Plaintiff has presented insufficient evidence for a trier of fact to find that Defendant's asserted reliance on the reports of Mr. Zink and Ms. Crider was pretextual.

Plaintiff's challenge to Defendant's asserted reliance on Ms. Jury's report of misconduct also fails.  Plaintiff argues that Ms. Jury was in a position to have engaged in the alleged misconduct herself; consulted an attorney when the investigation began; demanded job protection before she would assist in the investigation; and claimed that she had not spoken up before because Plaintiff was an abusive supervisor.  These facts do not appear to be particularly unusual in a situation where an employee is reporting on her supervisor's misconduct and certainly do not, standing alone, provide a basis for a jury to infer that Defendant did not rely, in good faith, on Ms. Jury's reports of misconduct.  Plaintiff has simply failed to present any evidence supporting the assertion that Defendant's purported reliance on the three independent reports of Plaintiff's

16

misconduct was a mere pretext for discrimination.

### ii.     Participation in the Investigation

Even assuming that Plaintiff was not allowed to participate in the investigation of the reports made against her, that fact does not permit a finding that the Defendant's asserted reliance on those reports--reports that the record indicates the Defendant did investigate--was pretextual. The record reflects that the parties sharply disagreed over the terms under which Plaintiff could participate in the investigation.  The record does not suggest that Defendant knew that the reports of misconduct were false and therefore excluded Plaintiff from the investigatory process in order to maintain the illusion of good faith reliance on the reports.  Denying Plaintiff the opportunity to respond to the specific allegations may have kept relevant evidence from coming to Defendant's attention but does not support a finding that Defendant's asserted reliance on reports of misconduct was pretextual.

### iii.     Stepp's Prevarications

Plaintiff asserts in support of finding pretext that Ms. Stepp lied during discovery regarding her knowledge of the petty cash fund and Medicaid billing procedures and documents. While Ms. Stepp's credibility would likely be generally undermined if a trier of fact found that she lied in her deposition, that finding would not permit, without some further evidence, a finding that Ms. Stepp also lied regarding her asserted reliance on Mr. Zink, Ms. Crider, and Ms. Jury's reports of Plaintiff's misconduct.  Plaintiff asserts that Ms. Stepp lied about facts unrelated to Defendant's asserted non-discriminatory reason, and Ms. Stepp was not the sole decisionmaker for the adverse actions taken against Plaintiff.

The Court finds, therefore, that Plaintiff has not produced sufficient evidence to permit a

trier of fact to find that Defendant's asserted reliance on reports of Plaintiff's misconduct was

pretext for discrimination.  Plaintiff has not adduced evidence showing that Defendant's legitimate

nondiscriminatory reason for placing Plaintiff on administrative leave and terminating her is

implausible, inconsistent, incoherent, contradictory, or otherwise unbelievable.

**B.      Denial of Reasonable Accommodation**

Plaintiff raises in her Opposition brief the argument that Defendant violated the ADA and

NMHRA by denying her a reasonable accommodation.  Generally, an employer "discriminates"

against a qualified individual with a disability if the employer fails to offer a reasonable

accommodation, so long as the employee is qualified for the job and the accommodation does not

impose an undue burden on the employer or require a change in the essential functions or

prerequisites of the job.  *See, e.g.*, *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999).

The basis for Plaintiff's accommodation claim is not precisely clear.  Although Defendant

interprets the claim as challenging Defendant's denial of sick leave, Plaintiff appears to be

challenging Defendant's refusal to schedule her predetermination hearing at a time when the

effects of Plaintiff's medical conditions and treatments would not prevent her from participating.

Neither Plaintiff's complaint nor Plaintiff's summary judgment opposition brief articulates the

theory of her reasonable accommodation claim.  Plaintiff's opposition brief also fails to identify

the legal or evidentiary basis for an accommodation claim.

Typically a reasonable accommodation claim is made where an individual is unable to

perform an essential element of a job because of a disability, but believes that a reasonable

accommodation by the employer would enable her to perform the job.  *See, e.g.*, *White v. York*

*Intern., Co.*, 45 F.3d 357, 361-62 (10th Cir. 1995).

Here, Plaintiff argues that she was unable to attend a predetermination hearing because of her disability and that the reasonable accommodation of moving the date of the hearing would have allowed her to attend the hearing.  Plaintiff has provided no legal precedent even suggesting that a challenge to the scheduling of a predeterminiaton hearing is a legally cognizable reasonable accommodation claim under the ADA and NMHRA.

Furthermore, the facts surrounding the scheduling of the hearing suggest that the Defendant did attempt to accommodate Plaintiff.  First, the Court notes that it is undisputed that Defendant did move the date of the predetermination hearing on two occasions and consistently offered Plaintiff the opportunity to submit a written statement in lieu of attending the hearing in person.[5]

Accordingly, the Court concludes that 1) Plaintiff has failed to present any evidence suggesting that her attendance at the predetermination hearing was necessary for her to be able to continue her job, *i.e*, that she would not have been terminated if she attended the hearing; and 2) that assuming her participation in the investigation of her misconduct was necessary to her continuing in her position, Plaintiff has failed to present evidence suggesting that the rescheduling and the opportunity to submit a written statement was an inadequate accommodation of her inability to attend the hearing.

Plaintiff has simply provided the Court with insufficient evidence or a legal basis for the Court to find that a reasonable jury could conclude that Defendant's refusal to move the

---

[5]  Notably, although Plaintiff points to doctors' notes as support for the proposition that she made Defendant aware that her disability prevented her from attending the hearing, the notes only address Plaintiff's ability to work and do not even discuss her ability to attend a hearing.  The doctors' statements also fail to articulate clearly when Plaintiff could return to work.

predetermination hearing from December 29, 2000, violated the reasonable accommodation requirements of the ADA or NMHRA.

Accordingly, the Court will grant judgment in favor of Defendant on Plaintiff's disparate treatment and denial of a reasonable accommodation claims under the ADA and NMHRA.[6]

## II.    DENIAL OF DUE PROCESS

Plaintiff alleges that Defendant denied her due process in violation of the Fourteenth Amendment to the United States Constitution and therefore brings a claim under 42 U.S.C. § 1983.  The sole Defendant in the action, Torrance County argues, and Plaintiff does not appear to dispute, that under well-settled Supreme Court precedent, a local governmental entity may not be held liable under 42 U.S.C. § 1983 for employing a person who violates another's Constitutional rights.  *See, e.g.*, *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

Plaintiff's sole response to Defendant's request for judgment on Plaintiff's Section 1983 claim is to move, in the body of her brief in opposition to summary judgment, to amend the complaint to sue the Torrance County Board of Commissioners.  The Court declines to interpret a single sentence in Plaintiff's summary judgment opposition brief as a motion for leave to file a second amended complaint and will not attempt to examine the viability of a Section 1983 claim against a defendant not before the Court.

Accordingly, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's claim under 42 U.S.C. § 1983.

---

[6]  Defendant also challenges a retaliation claim, but Plaintiff notes in her opposition brief that she is not pursuing any claim under the ADA or NMHRA under a theory of retaliation.

**III.     FAMILY AND MEDICAL LEAVE ACT CLAIM**

The Family and Medical Leave Act ("FMLA")  provides eligible employees up to twelve weeks of leave during any twelve-month period so that they may care for a relative, welcome a new child, or because of a serious health condition.  29 U.S.C. § 2612(a)(1)(A)-(D).  Plaintiff's FMLA claim is based on the allegation that upon receipt of Plaintiff's December 8, 2000, request for sick leave, Defendant was required to provide Plaintiff with the benefits of the FMLA, including retention of her position for up to twelve weeks, and that Defendant violated the FMLA by terminating her four weeks later.

Courts generally recognize two types of claims under the FMLA:  "FMLA interference" and "FMLA retaliation."   FMLA interference claims arise from 29 U.S.C. § 2615(a)(1), which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  FMLA retaliation claims arise from 29 U.S.C. § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

A plaintiff establishes a *prima facie* case of FMLA interference by showing that he or she is entitled to FMLA leave and that his or her employer interfered with, restrained or denied the exercise of his or her rights under the Act.  *See, e.g.*, *Wells v. Wal-Mart Stores, Inc.*, 219 F.Supp.2d 1197, 1207 (D. Kan. 2002).  Importantly, "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1262 (10th Cir. 1998), citing

21

29 C.F.R § 825.216(a).  As a result, an employee may be dismissed, even though it would prevent the exercise of a statutory right to FMLA leave, if the dismissal would have occurred regardless of the employee's request for, or taking of, FMLA leave.  *Id.* at 1261-62.

A *prima facie* case of FMLA retaliation is established by showing that (1) plaintiff availed herself of a protected right under the FMLA; (2) plaintiff was adversely affected by an employment decision; and (3) there is a causal connection between the two actions.  *See, e.g.*, *Morgan*, 108 F.3d at 1325.

Plaintiff's sole substantive argument in support of her FMLA claim is the assertion that Defendant denied her leave "for the express reason that it might have enabled her to get well enough to fight the due-process deficient hearing and termination Defendant was intent on."[7]  This argument has two fatal flaws.  First, Plaintiff adduces no evidence in support of the argument.  In fact, the evidence in the record indicates that Defendant denied Plaintiff sick leave because Defendant believed that an employee could not receive sick leave while on paid administrative leave.  Second, Plaintiff's argument does not suggest that her rights under the FMLA were violated.  An employer may terminate an employee within twelve weeks of the employee's requesting FMLA leave if the termination is unrelated to the request for the FMLA leave.  *Gunnell,* 152 F.3d at 1261-62.  Plaintiff has not described any evidence showing that her termination was related to her request for FMLA leave or that Defendant interfered with her right to FMLA leave by denying such leave while Plaintiff was on paid administrative leave.

The Court finds that Plaintiff has produced no evidence in support of a *prima facie* case of

---

[7]  Plaintiff also responds to Defendant's assertion that her request for "sick leave" did not invoke the FMLA.  For the purposes of this Opinion, the Court will assume that Plaintiffs' request was sufficient to invoke the FMLA.

a violation of the FMLA.  Accordingly, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's claim under the FMLA.

## IV.    BREACH OF CONTRACT

Plaintiff alleges that she was discharged without good cause in violation of her employment contract with Defendant.  There appears to be no dispute that Plaintiff had a valid employment contract with Torrance County and that the terms of that contract, as set forth in the Torrance County Personnel Policy Manual, provided that Plaintiff, as a "regular employee," could be disciplined only for cause.  Plaintiff's breach of contract claim, therefore, turns on whether Defendant had "cause" to terminate her.

Defendant identifies numerous allegations of misconduct and notes that Plaintiff did not appear in person to dispute them at the predetermination or post-termination hearings.  Plaintiff, on the other hand, denies that she engaged in any of the misconduct identified as cause for her termination.  Viewing the facts in the light most favorable to the Plaintiff, the Court finds that a jury could credit Plaintiff's testimony and find that she did not engage in any misconduct and therefore that Defendant did not have cause to terminate her.

Accordingly, the Court will deny Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim.

## V.    FRONT/BACK PAY AND PUNITIVE DAMAGES

Defendant moves for a determination on Plaintiff's entitlement to front and back pay and punitive damages.  Plaintiff does not appear to contest Defendant's assertion that Plaintiff is not entitled to punitive damages.  Accordingly, the Court will grant Defendant's Motion for Judgment on Plaintiff's claims for punitive damages.

The parties briefing on the issue of Plaintiff's entitlement to front and back pay centered on Plaintiff's discrimination and Constitutional claims.  The Court has granted judgment in favor of Defendant on Plaintiff's discrimination and Constitutional claims, leaving the sole damages question as what Plaintiff can recover under her breach of contract claim.  Defendant's motion on damages does not address Plaintiff's entitlement to damages under her breach of contract claim. Accordingly, the Court will deny Defendant's Motion for Judgment on Plaintiff's claims for front and back pay as moot.

<u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, filed February 10, 2003, **[Doc. No. 93]** is **GRANTED in part and DENIED in part**.  Summary judgment is granted in favor of Defendant on 1) Plaintiff's disparate treatment and denial of a reasonable accommodation claims under the ADA and NMHRA; 2) Plaintiff's claim under 42 U.S.C. § 1983; 3)  Plaintiff's claim under the FMLA; and 4) Plaintiff's claim for punitive damages.  Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim is denied and Defendant's Motion for Summary Judgment on Plaintiff's claims for front and back pay is denied as moot.

Dated this 1st day of March, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorneys for Plaintiff</u>:
    Hannah Best, Esq.

<u>Attorneys for Defendant</u>:
    Elizabeth L. German, Esq.